Case No. 17-5122 Ryan Noah Shapiro, Appellant v. United States Department of Justice Mr. Light, the Appellant, Ms. Lyons, the Respondent Good morning. May it please the Court, Jeffrey Light on behalf of Appellant Ryan Noah Shapiro. I'd like to begin with the 7E issue. In this case, the government withheld, in their entirety, several reports by a database known as Accurate. So let me ask you about that. You know about Accurate. Yes. So what more do you want? The reports. Right. And so the government says, gives some explanations as to why it doesn't want to give you the reports. I mean, you can understand the theory, and you want to take it to the extreme, that any time they do anything, they'll just invoke 7E. Well, there are two different explanations they gave. One that's in the record in the district court, and then a different explanation they're giving on appeal, which is not supported by the record. Well, I'm looking at the affidavits in the record. Yes. Or the declarations in the record. Correct. As to why the government did not want to turn over those reports. The reason that they gave there would be, for example, on Joint Appendix 49, the Fourth Declaration of David Hardy, they said some portions of the report can be disclosed because they would disclose general information. And other parts cannot be disclosed because they would disclose detailed information. And didn't he say that he had reviewed these reports and determined what could and couldn't be? He makes a reference to segregability at some point. He does make a conclusory sentence that he reviewed them and determined they couldn't be segregated. And yet, portions of- Now that, you said JA-49? JA-489 and 490. That's his first declaration. I was looking at his fourth declaration. Where he's talking about- 489, not 4- Oh, I beg your pardon. That we're together. Yes. And what Mr. Hardy expresses a concern about there is the scope of the information and the identity of the database. We now know the identity of the database, despite Mr. Hardy raising a lot of concerns about- Water over the dam. You've got it. Right. Okay. We've got it. And the revealing of that information shows that his premise about that was incorrect. The other part he warns about is the scope of the information. And that information, the scope of what's contained in the database, is revealed by the manuals. So the government takes a totally different approach on appeal and says, Well, it's not really the scope of the information in the database that's what it's an issue. Instead, it is the fact that a particular search was used at a particular time during the investigation. And yet, that information is something that one of the declarant's article, in this case, specifically said would pose no harm if it were released. And then there are releases of this information. Portions of accurate reports are disclosed along with the fact that it's accurate. And, for example- So just help me here. What has not been disclosed that you can identify specifically? There are two accurate reports that are- the entirety of them are withheld. There are- separately from that, I guess, there were other searches that were done of the accurate system. And the results of those, or at times summaries of the results of those, were disclosed. And the government never explains the difference between why some of those can be disclosed and others cannot, or to the extent that some of them- So what do you think ought to have happened here? In other words, I understand your point. You didn't get everything you wanted, and you're claiming that the government has failed to provide adequate- an adequate explanation. We've got four declarations here in this case, and the judge kept sending it back. And finally they come up with this theory that seems perfectly reasonable, that, you know, a prosecutor has many tools available to him. How he puts it all together is a different question. And that's what the reports would show. But the issue here is whether we're talking about a known technique or an unknown technique. Prosecutors and law enforcement- But you already know the technique. Right, so because it's a known technique- So that's what I'm trying to understand. You know the technique because you've got the accuracy. You know what types of data are available. Right. You don't know how it's been put together in a particular way, right, in a particular report. We know how every report is put together. That's in the appendix. And the only thing the government is arguing here is we don't know which particular report was run in this case. But that's their theory on appeal. They never make that argument in district court. The record doesn't support that. Mr. Hardy never made that judgment that that is something that would cause harm. Well, I'm looking at 489. I don't think that's specific enough. I'm just asking what doesn't this- Mr. Hardy's concern on 49 and 90 seems to be primarily with the identity of the database because revealing that would reveal what kind of information the FBI can search. So we already know that. We already know that. And Exemption 70 does not cover known techniques. So in order to address that, the government's taken a position on appeal that it's not the scope of the information that is what needs to be protected. It is the fact that it's used in a particular case. And that is a- That's at the top of 490. Right. The database produces comprehensive reports containing- Detailed information the FBI uses in its investigations. Right. We know what reports the FBI uses in its investigations. They use the accurate reports we have, some of them. We know, for example, from- Counsel, here's what I'm having trouble understanding, and just help me on this. We know that a prosecutor interviews witnesses. Yes. All right? And then puts together a case because he either has it or he doesn't. So he files a report saying, I'm recommending we take this to the grand jury for charges 1, 2, and 3. That's the report you want, right? Right. But this is not a report that reflects the judgment of a prosecutor. It is a factual report that would contain information. I just gave you a theory as to why it did indicate a judgment. He's heard the witnesses. He's credited some. He hasn't credited others. That may very well fall within Exemption 5. But we're talking about Exemption 7e here. That's where I am, on 489 and 90. Well, the FBI never invoked Exemption 5. This is a 7e case. And under 7e, what's covered, the statute says techniques and procedures. This is B7e. Yes. That's where I am. That's where we are. And under B7e, we're talking about techniques and procedures. We're not talking about how they're applied in a specific case. Well, again, I won't belabor this anymore. You already know the Akron system. The question is, do you get the reports? Right. And I gave you a hypothetical as to why you might not get the reports under B7e. Right. And as I understand your hypothetical, what you're saying is that a report, such as the one that might be produced by a prosecutor, would disclose information about the prosecutor's thinking in the particular case. Is that correct? That was one hypothetical. Right. And that is something that the prosecutor's thinking would be, deliberative process, privilege, protect under Exemption 5. So intertwined. And just, you know, Mr. Hardy talks this way in his declarations. All right, let's go on. He uses a lot of generic terms like that. Yeah. Go on to something else. Can I change the subject here? Please. Okay. Yes. Could you focus on Schwartz 91, on that document? Right. Which you, and as I understand it, what you want is, you want this, you want them to search for serial 91. Is that right? I don't know if search is the right term. We want them to retrieve that document. That's what I meant. Right. That's what you want. Your view is that document in this case, with this very long number, this case number, whatever that is, really long number, you want them to produce that document, right? Record 91. They should retrieve it. Retrieve it. Review it to see if it's responsive. And if it's not. If it's not responsive, then it's not responsive. Right. That's the end of the inquiry. If it is responsive. If it is responsive, that's what you want, right? If it's responsive and not exempt, then produce it. Yes. It's one document. You're not asking them to search all their records for his e-mail address or his website. It's just this document, right? It's one specific thing because that is what the lead is to. Do you know what this is, by the way? Do you have any idea? Excuse me? Do you know what it is? Serial 91. Yeah. What do you? I don't. What I can tell you, I mean, it's not in the record, but I can tell you that the C in the number refers to a control file. I see. And the IP appears to refer to internet protocol. Oh, I see. The IP address that tells us addresses on the internet. And serial tells us what? I was just trying to figure out. If you're listing documents in serial order, is that what that means? Yeah, essentially. So each document is assigned a number. As a number. So there's a document 91 in the series. So you want them to look at 91. Right. So it's a very narrow thing that we're asking for because the lead is that specific. Yeah. Okay. If there are no further questions, I'd like to reserve my time for rebuttal. I don't have any other questions. All right. Thank you. Good morning. Good morning. May it please the Court. Let me start with the second issue first because I may be able to get it out of the way here relatively easily. Serial 91. That would be good. Would that be good? So what about my question? All they want. If all they want. That's all they want. They want nothing more than for the FBI to look at that document and if it's relevant and not exempt, to turn it over. And if that is all that they want, the FBI is prepared to do that. That is not how the FBI had understood the argument. No, I understand that because that's why I asked them the question because in your brief you talk about this would be a big burden and it certainly would if you had to search beyond it. So the reason I asked counsel this question was to see whether that's really – because my instinct was all they wanted was this record 91. He's now confirmed that and you're prepared to represent that the department will now search for that document. They will retrieve that document, yes, Your Honor. And if it's relevant and not exempt, they'll turn it over, right? Assuming it's a record subject to the FOIA. Yes. And it's responsive based on it. My question is why wasn't all this resolved a long time ago? Because the FOIA has provisions in it that says when it's not clear what the search is, what the scope is, talk to the requester, get some information. And we used to have a counsel who used to come here from the Department of Justice and say I'm happy to tell the court in this FOIA case seven of the issues have disappeared. So you only have to deal with one. So all of us have spent some time on this and now you're telling us, no, the FBI is happy to look at serial 91 and decide whether it's relevant and turn it over if it's not exempt. So we can say that issue's moved? Yes, Your Honor. I would say that you can. All right. Moving right along. May I address the substance of your question briefly? Which is? Why did it take so long? Why are we here essentially? I don't think that would help me at this point. Okay. Then I don't need to. Thank you. On the question of the application of Exemption 7E, the question is not the scope of the database. It's the scope of the FBI's use of the database. And as Your Honor has been focused on the Fourth Hardy Declaration, that talks about how queries are made of the database, how the FBI uses the information to gather and develop investigative leads, where it looks and how it uses the data is all of the parts that are revealed in the reports. And the FBI has given the court evidence about how the FBI actually uses it, is not well known to the public, and how there is a chance that revelation of that information would risk circumvention of the law. And this is almost on all fours with the court's decision in Blackwell to allow similar reports using a different database, but it's functionally the same thing, to withhold those same reports. And so we think this case falls squarely within Blackwell. So you don't think that case is distinguishable on the grounds that the request here is for any and all and related to it. I mean, it's much broader. The request in Blackwell was quite broad. It was for all documents relating to key witnesses and some other things in the trial. Yeah, and then it narrows as you keep going. But based on the case law requiring the FBI to interpret it broadly, that... But if it didn't have to do with Airline A, he wasn't asking for it. So here he's asking for more. I'm just trying to understand how far Blackwell goes, that's all. Well, I think Blackwell, because it covers such a similar database here and the reports generated by it, those are the key facts. One distinguishing characteristic there is that there's a fact in Blackwell that the company who ran the database had designed particular, I guess, software, but don't hold me to that, a way for the FBI to use it in particularly designed for the FBI. That fact is absent here, but just because the FBI is now using its own techniques that it develops without paying for them is not a fact that would make a difference. So we believe this is squarely within Blackwell. Then we have five documents. We have five listed, yes, documents that were relating to 7E. I think some of them originally are the ones where accurate words originally withheld, but then it was released during a litigation. So what has not been released that is being solved? The two reports, Your Honor, the two reports that would provide a roadmap into how the FBI uses— What are those numbers? Those are numbers what? I believe those are, well, Schwartz numbers, 83 to 89. Okay, all right. So what I'm talking about is the next group of documents raised in the brief, 3A and B, 9A and B, 56. Those five documents. I'll be happy to address those, Your Honor. Thank you. So exhibit—actually, this is a good example of your earlier question about what happens in litigation. Can we just go through them? What about—they're not the list that Judge Rogers just gave. What about 3A and 3B? Do you object to those or not? 3A and 3B were processed but withheld in full, and you can see that at JA page 162. We've got that, yeah. And what about 9B and 9C? 9B and 9C were also an enclosure that the FBI tracked down and released and processed. It released one page, 9A, and withheld 9B and C in full, and that's covered at JA 163 to 64. And what about 56? JA 56 is at— I'm sorry. I'm sorry. Document 46, Schwartz. Excuse me before you answer the next part. What was the record site you gave me for 9A and B? That would be JA 163 and 64, Your Honor. Thank you. You don't say anything about 56 in your brief. When I look back over this, Your Honor, I apologize. It is dealt with in a footnote that also deals with page 91, and I think I got confused. Okay. So let me just straighten that out. Okay. And I apologize. What's your position? What's the Department's position about 56? Okay. Schwartz 56— They've withdrawn their 9E exemption claim, right? Right. Okay, so has that been turned over or— No. Do you have an objection to turning it over? Yes. What's the objection? The objection is, as you can see at JA page 446, there's a deleted page thing there that invokes multiple other exemptions that fully justify withholding the document in full. And were those exemptions invoked at the beginning? Yes. Okay. Yes. So you still object. The Department still objects. But the district court hasn't ruled on any of that, right? Isn't that right? The whole district court decision on Rule 56. The district court did not address it expressly. This came up originally in the reply brief to the first round of summary judgment briefing in 2013, I think. But then there's another whole big round of summary judgment briefing. So help us with the district court's opinion, all right? Because I read that when he granted summary judgment, the final order, he denied everything. Yes. All right? Basically saying that where the government had invoked an exemption, the district court was satisfied it was a proper invocation. Yes, Your Honor. All right. So we don't have anything specific about 56, but I thought it was within that umbrella. Correct. So then the district court talks about duplicates. Yes. There are other documents in this record that are duplicative. And going over the record, it turns out, I'm trying to understand whether this was error or not, because at JA 16 and at JA 23, there are references in Mr. Hardy's declaration to duplicates. And unfortunately, the numbers aren't always associated. Yes, there are. So it's hard to track them. That's true. There are instances where the Schwartz numbering, fate number, don't appear in each copy in the record. It does make it harder. So when the district court says there was no problem as to some of these documents because they were duplicates, do you know what he was referring to? With enough work, you can trace through, I think, everything. But that doesn't affect the issue with the five documents we just discussed. That doesn't. So he is not talking about those documents. Right. And he may be talking about what Mr. Hardy was talking about in his first declaration. Right. All right. That's how I understand the record, Your Honor. Okay. So are you ready to give up anything else at this point? Any other documents? No, Your Honor. All right. I thought I had another one with 56, but I guess not. Yes, I know. I do apologize for my confusion.  No, that's fine. I understand. I'm just trying to trace these things. It's a confusing record. Yeah. Anything further? Nothing further for me, Your Honor. If there are no further questions, we respectfully ask that the judgment be affirmed. Thank you. Subject, of course, to turning over what you've agreed to. Yes, Your Honor, which we will take care of probably before the decision. Well, there were some instances where the declaration said, we're turning over something, see Exhibit B, and then you go to Exhibit B. You just explained it here. The declaration would have been more artful. As I said in my brief, it might have been more artful and precise to have said, we will review the document and process it and release any exempt material. All right. Thank you. Non-exempt material. All right. Counsel for Pelham? Sure. Just very, very briefly on the document that they intend to produce, I believe that— You've got to be careful. You've won on that issue. You've won. Yes. Don't say anything. Okay? Proceeding, I would ask that the court vacate that aspect of the district court's opinion, which may have some implications for seeking attorney fees. We understand that. Okay. Good point. Good point. What about 56? So 56 was also—their deleted page information sheet has boxes checked for 6 and 7C as well, presumably some of the information in that report refers to a person who has privacy interests. If that is the case, then some of that information may be able to be redacted. Well, shouldn't we just send this back to the district court? Yes. So you just want them to do a segregability? You don't want us to decide anything on this. Just send it back. District court didn't focus on it, right? They're now claiming additional exemptions, right? Or they claimed exemptions, and your question is, are some parts of the documents nonetheless releasable? Yes, that's— So it's a remand for a segregability determination? I'm just—I'm asking. Well, the district court didn't make a specific decision about page 56 about any of the exemptions. He granted summary judgment, all right? Granted summary judgment. To me, that's a decision. I understand your point. He didn't say anything, but he had, what, three other opinions here. I believe that the reason that the judge didn't say anything is that he was under the impression that he didn't need a rule because the page was disclosed because the government said the page was disclosed, and therefore the court didn't reach the issue. All right, so as to 56— Yes. You're suggesting we should get a—consider a remand for the district court to do what as to document 56, Schwartz 56? To rule on whatever assertions the government—whatever exemptions the government asserts, and if— No, see, counsel, here, I'm thinking. I'm the district court judge. I've granted summary judgment. Now the court of appeals is saying, grant it again. No, I mean, what do we want the district court to do? He's already granted summary judgment. I understand the segregability. There's nothing I found in his opinions that specifically addressed that. Maybe to put it a different way, segregability analysis I think is proper when there is a finding that some information can be withheld and others may not. Here there wasn't a finding whether any of the information could be withheld. So it seems like you have to resolve that question first. Well, all I'm saying is I'm the district court judge. I've entered an order granting summary judgment. Yes. I have denied your request for that record. Now the question is, did I fail to make a segregability analysis? Because, in fact, maybe parts of those documents can be released. I thought that was your argument. If you mean as far as segregability parts or potentially all of it could be released, then that's what needs to happen. I don't think we can assume that it's proper, that parts of it. Let me just suggest, according to my notes, what happened here was that, okay, with respect to 56, the FBI originally invoked 70, right? Yes. But then it withdrew that in response to the district court's direction that the FBI needed to file more justification, right? Right. Okay. So presumably, so I assume what happened, am I right? This case has gone up, gone back and forth between the district court and the parties. There's lots of affidavits. Is 56 something that kind of just got the other exemptions that the FBI invoked just got lost? And the district court, because this thing is so confusing, didn't rule on those exemptions. And so the direction to the district court would be to, we would vacate, except with respect to this judgment, with this document, the summary judgment order, and remand it for the district court to evaluate it under these other exemptions that the FBI has invoked. Is that what we would do? Yes. I think that would be the correct instruction. Do you want to ask the government if she's got anything? Yeah, I do want to ask the government. Yeah, if she's got a problem with that. Yeah, and we'll let you finish your rebuttal. Okay. Then I would ask the government a couple of things about that. I didn't read the record in this case as district court overlooking something because he asked for a further justification and he received it. Now, whether it was adequate or not, presumably you had a chance to address that. Well, there were a lot of different pages that issue. No, with all due respect, we've been spending a lot of time on 489, but the point is Mr. Hardy came back with some more, and then the judge has his rulings. Right? Well, when the judge issued the opinion, the judge said, my understanding is that these are the pages that remain at issue, and the judge was factually incorrect. So did you file a motion for reconsideration? No. Why not? I mean, if he's factually incorrect, why not just get him to correct it? Well, there's no— He may not think he's incorrect. I understand that, but at least it would save an appeal. Well, I don't think it would save the appeal because there are a lot of other issues we needed to resolve on appeal. Well, you've already won one that probably could have been worked out in advance. Number two, we've had this discussion about the exemption, and you've gotten part of what you wanted. You just don't have these two reports. Right. And now we're talking about one document. 56. Is that right? That's right. Well, 56, there's also the 3A and 3B. Right. What happened to 9A and 9B? Yeah, those as well. Sorry. So there are five documents. There are five. Right. So you think the district court didn't rule properly on any of them or didn't rule at all? Didn't rule at all on any of those. The court seemed to be thinking that some of those were duplicates—two of those were duplicates of other pages when, in fact, they were not duplicates. Well, he doesn't say it that way, all right? And he says in his summary judgment order, he says, Shapiro now challenges only the government's justification for withholding information under 7E. Right. So he deals with it and cites Blackwell. And then he says, withhold report Schwartz 83 to 89, Schwartz 91. And he concludes that the government has provided sufficient justification as to the documents it's withheld pursuant to 7E. So if you thought the district court hadn't ruled on something—I mean, I have three separate opinions here from the district court. Right. Yes, we could have asked the district court for a fourth opinion. But there is no prerequisite that a party seek reconsideration before appealing. No, there certainly isn't. But, you know, in terms of the district court, probably if he's still familiar with the case when he filed a motion for reconsideration as opposed to getting it back from us. I'm just—I don't understand when these things get dragged out. You want the information. Yes. I don't think you had to come here to get some of it. That's all my point. Maybe I'm wrong. All right. So you want those five documents to go back to the district court. Right. And so in his third—let's see, in his second opinion, he—in his second opinion, he's talking about the adequacy of the search systems. Right. You located, you know, these other pages, 68 pages that had been released to someone else. And then his first one, he sort of held in abeyance any final ruling because he wanted more information from the government, more justification from the government. Right. And there he was dealing with the 23 pages. So if you take the 23 pages and the 68 pages, are these five pages somewhere in there? The five pages are part— 3A, 3B, 9A, 9B, 56. Are they part of the 68? No. Those were part of the original—well, 3A, 3B— No. If you hear me, counsel, the first production was 23 documents. Right. The second production was 68 documents. Right. Now, in your brief, you name five documents in your third argument. Right. Are those five documents part of the 68? Those are part of the—yes, they were part of the first production, and one of them was part of the second production. So they're within that first— So the answer to my question is yes. Yes. And so the district court had all that before him, according to his opinions. Well, the district court had the documents but said that these particular ones were not at issue. Where does he say that? I mean, his first opinion starts on J189, talks about all these documents. And his second opinion is after he's gotten further information from the government about its search. And then the third one is about 78. So I'm trying to find out why you think the district court overlooked these documents. So I'm looking at on JA190. Right. Where at the top it says, with two exceptions, which the government has withheld in total on the ground that they are duplicates. Right. So that is incorrect. The government did not withhold those on the grounds that they are duplicates. Are they duplicates? No. How do you know that? The government is withholding them under 78. No, but Mr. Hardy, in his first declaration, keeps talking, telling me about duplicates. Other documents are duplicated. These are not. These documents exist. Let me say, I have no idea how I figured that out. I don't know where the judge – There is a Vaughan index here. Yes. All right. That's referenced. And there's still more references to duplicates by Mr. Hardy. There are references to duplicates, but there's nothing in the record that says 3A and 3B were duplicates. How would we ever know? Well, how would the judge have a factual basis to find that they were duplicates? Beyond speculating. Well, you say there's nothing in the record, but there must be something in the record. I couldn't find it. There's nothing in the record before me. But, I mean, I suppose in these FOIA cases it would be helpful if you're not going to have, not necessarily you, but the government as well, you know, a document-by-document Vaughan index so we can trace these things. I think that would be great. Because I have no idea what we're talking about. All I know is that 3A and 3B are part of the original 23, and maybe 9A and 9B. And then you say one of the documents is part of the 68. Right. I agree. A traditional Vaughan index listing page by page I think would be extremely helpful. Or just even a brief so we know what we're dealing with, or the government's brief. I agree. But to finish that sentence. Because my point, what I'm trying to get at is I don't know how we write an opinion where we don't even know which documents we're talking about. The judge says, the district court says there were some duplicates. Right. There are some duplicates. Are they these documents or not? I don't know. I don't know. And you don't know either. You haven't seen the documents. You're right. Well, it seems like it would be appropriate for remand. All right. Well, remember, you've got to convince us to send it back. All right? I'm serious about that. I understand, but if there's no basis in the record for the judge to make a factual finding about these and the judge's entire conclusion is 3A and 3B are duplicates because Mr. Hardy says there are some duplicates at issue in this case, that factual finding is without support. All right. Let me ask counsel for the government, Mrs. Lyon, about this. Do you have or know where there is a list of all these documents, these 68 documents, so we know what we're talking about? I am not aware of anything in the record that lists them in one document like in one chart. There is no such thing. That's not how the FBI did the declarations in this case. That's fine, but I'm talking about when the district court is trying to rule. Yes, Your Honor. When the district court ruled, it had before it the declaration, and in its opinion, it addressed the application of both Exemption 6 and Exemption 7C, and it upheld the FBI's application of both of those exemptions in their entirety. So that's in his first opinion? Yes, Your Honor. That opinion begins at JA 188, and it includes those rulings. It starts at really 195 to 197 of the joint appendix is that part. I'm not aware of any rule or law or case that states that the district court's failure to identify each particular document on which those exemptions are withheld in its opinion is a basis for any question or error. The question is whether the exemptions are properly applied and whether the evidence is sufficient to grant summary judgment, and here that ruling has been made, and this ruling on appeal is sort of a collateral attack. What do you mean by that? I mean, Your Honor, that sort of along the lines of what Judge Rogers is saying, if there was a particular thought that there was a factual error or something had been overlooked, the appropriate way to preserve that error for purposes of appeal would be to move to reconsider and let the district court in the first instance. But there's no requirement for that. I mean, it would be nice. It would be nice. Do we require that? No. No, but there's also no requirement that the district court identify each document it is upholding the exemptions on. Sure. Well, what do we do with 56? The 90 exemption was withdrawn. The 90 exemption claim was withdrawn. Yes, Your Honor. And the Bureau has invoked other exemptions, right? But the district court hasn't ruled on those, correct? The district court has ruled on those exemptions. Oh, it has? Yes. Where did it rule on that? Those decisions are joint appendix pages 195 to 197, and it begins its discussion of both exemption 6 and 7C on page 192. So this one is completely resolved? This is completely resolved. Yes. Okay. And there's no need for a remand. Okay. I got you. All right. Thank you. Thank you. All right. We will take the case under advisement.
judges: Rogers, Tatel, Sentelle